**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **JAMES FLEMING,** *et al.***,** | * | |
| **Plaintiffs,** | * | |
| **v.** | | **Case No.: PWG-15-709** |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

In April, 2010, a childcare worker at "the Cody CDC," the child development center at
the Joint Base Myer-Henderson Hall ("JBMHH"), a joint base of the United States military,
physically assaulted minor Plaintiff J.F., who was one year old at the time and attended day care
at the Cody CDC.[1]   Am. Compl. ¶¶ 4, 8, 9, ECF No. 16.   Then, "[a] few months after the
incident," the director of Family and Morale, Welfare and Recreation ("FMWR")[2] "pressed a
panic button" during a conversation with J.F.'s father, James Fleming, causing military police to
arrive and escort J.F. and Mr. Fleming off of the military base at gunpoint.  *Id.* ¶¶ 49–58.   In
November 2012, Fleming and J.F.'s mother, Taren Rice, learned that the Government had not
conducted complete background checks for childcare workers it hired at the Cody CDC, and it
had hired more than thirty workers with criminal records, including assault and sexual assault.
*Id.* ¶¶ 67, 71.  Fleming and Rice, on J.F.'s behalf, filed an administrative tort claim with the

---

[1] For purposes of considering the Government's Motion to Dismiss, this Court accepts the facts
that Plaintiffs alleged in their Amended Complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388,
390 (4th Cir. 2011).

[2] FMWR is the Army agency that provides "support programs, including child care [including
the Cody CDC in particular], youth programs, schools, libraries, sports and athletics, financial
counseling," and more for soldiers and their families.  *See* Joint Base Myer-Henderson Hall,
Family and Morale, Welfare, and Recreation, http://www.jbmhhmwr.com/fmwr-history.

Department of the Army ("Army") on March 27, 2014, which the Army denied on September 15, 2014. *Id.* ¶¶ 2, 91.

On March 13, 2015, Plaintiffs then filed this five-count negligence action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 ("FTCA"), based on its negligent hiring, retention and supervision of childcare workers with criminal records. ECF No. 1. Currently pending is the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 17.[3] Despite the gravity of their allegations, because Plaintiffs did not file a timely administrative claim and otherwise failed to state a claim for which the Government may be liable, I must grant the Government's Motion and dismiss this case.

### Background

When she was one year old, J.F. "was violently, physically assaulted by a teacher at the Cody CDC." Am. Compl. ¶¶ 8, 9. The childcare worker "placed J.F. in a toy tunnel and slammed her on the ground several times simply because J.F. was crying." *Id.* Her parents, who worked at JBMHH, learned about the incident "approximately two weeks later" and watched a video of it. *Id.* ¶¶ 4, 5, 22, 33.

Then, "[a] few months after the incident,"[4] J.F. and Mr. Fleming "were escorted off of the base at gunpoint" by military police, after Mr. Fleming tried to drop J.F. off at the Cody CDC without having paid the childcare bill in full. *Id.* ¶¶ 49–58. Monique Murdock, the director of the FMWR at that time, had told him that "the bill needed to be paid for J.F. to continue attending day care," but her immediate supervisor, William Hovarth, told Fleming to drop J.F. off and "said he would inform Director Murdock." *Id.* When Fleming arrived with J.F. and

---

[3] The parties fully briefed the motion. ECF Nos. 17-1, 18, 19. A hearing is not necessary. *See* Loc. R. 105.6.

[4] The Government asserts that the second incident occurred on August 16, 2011. Gov't Mem. 2.

discussed the circumstances with Murdock, the director "pressed a panic button under the front desk that was recently installed to call military police in the event of a threat or emergency." *Id.*

More than two years later, in November 2012, "J.F.'s parents . . . learned of the systemic breakdown in security and background reviews of potential childcare workers at the Cody CDC," including the "hir[ing] and plac[ing] in charge of children" of thirty-one or more childcare workers who "had criminal convictions and criminal backgrounds, including assault and sexual assault." *Id.* ¶¶ 67, 71. Plaintiffs claim that J.F. "continued to be mentally and physically abused from April 2010 until January 2013." *Id.* ¶ 81. They allege that "J.F.'s parents only learned of the proximate cause of J.F.'s assault through news media reports in November 2012, after two more children were assaulted at the same facility." *Id.* ¶ 84.

After almost four years passed since the two incidents, Fleming and Rice filed an administrative tort claim with the Army on March 27, 2014 on behalf of J.F., regarding her "abuse at the Cody CDC"; the Army denied the claim on September 15, 2014. Am. Compl. ¶¶ 2, 91. Plaintiffs filed this FTCA action against the United States on March 13, 2015. Compl. 1, ECF No. 1. They claim negligence based on the Government's hiring, retention, and supervision of "more than two dozen teachers with criminal backgrounds at its Cody CDC child care facility on JBMHH," which caused "serious injuries and psychological trauma" to the minor plaintiff and "emotional distress" to her parents, Am. Compl. ¶¶ 99–101 (Count I). On the same basis, they also claim negligent infliction of emotional distress that caused "serious injuries and severe emotional distress" to J.F. (Count II), *id.* ¶¶ 106–07, and caused "pain and suffering" to her parents (Count III), *id.* ¶ 114. Additionally, J.F. and Fleming claim negligent infliction of emotional distress from Murdock pushing the panic button, causing them to be surrounded by "multiple military police with guns drawn." *Id.* ¶ 118 (Count IV). They claim that, as a result,

they suffered "severe emotional distress, including anxiety, stress, and fear of police and strangers." *Id.* ¶ 119.

The Government sought leave to file a motion to dismiss, ECF No. 8, and I gave Plaintiffs the opportunity to amend their complaint, based on the Government's letter request, prior to the filing of the motion, ECF No. 15. Plaintiffs filed their Amended Complaint, and the Government filed the pending motion. In its letter request, the Government asserted various grounds for dismissal: the statute of limitations, Plaintiffs' failure to present all claims at the administrative level, and the confines of the Government's limited waiver of sovereign immunity. Ltr. Req. 1–2. In its memorandum, the Government raises the same grounds, as well as Plaintiffs' failure to state a claim for negligent infliction of emotional distress. Gov't Mem. 13, 17, 20, 22.

## **Standard of Review**

The FTCA provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such a claim accrues or unless action is begun within six months after" the agency mails notice of denial of the claim. 28 U.S.C. § 2401(b). Until recently, courts have analyzed motions to dismiss based on this statute of limitations as Rule 12(b)(1) motions to dismiss for lack of jurisdiction. *E.g.*, *Horsey v. United States*, No. ELH-14-03844, 2015 WL 1566238, at *3 (D. Md. Apr. 7, 2015) ("The Fourth Circuit has held that a plaintiff's failure to timely file FTCA claims deprives federal courts of jurisdiction over the claims. Accordingly, the Government's FTCA Motion is properly adjudicated under Rule 12(b)(1)."). The Supreme Court since has held that § 2401(b) imposes a "standard time bar" that is not jurisdictional. *United States v. Kwai Fun Wong*, 135 S.

Ct. 1625, 1629, 1632 (2015).  Therefore, I will consider the Government's Motion to Dismiss under Rule 12(b)(6).  *See id.*

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> A Rule 12(b)(6) motion "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred," except under "the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007). To consider a statute of limitations defense at the Rule 12(b)(6) stage, "all facts necessary to the affirmative defense [must] 'clearly appear[ ] *on the face of the complaint.*'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added)). Then, if the allegations on the face of the complaint show that the affirmative defense would bar any recovery, the plaintiff fails to state a claim. *Jones v. Bock*, 549 U.S. 199, 214–15 (2007).

*Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 648 (D. Md. 2015).

## **Discussion**

The FTCA provides that:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  Further, as noted, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such a claim accrues or unless action is begun within six months after" the agency mails notice of denial of the claim.  28 U.S.C. § 2401(b).  Even though the statute presents the exhaustion requirements in the disjunctive, "common sense and the legislative history tell us that it requires the claimant *both* to file the claim with the agency within two years after accrual of the claim *and* then to file a complaint in the District Court within six months after the agency denies the claim." *Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980) (emphasis added).

"[A] claim accrues within the meaning of § 2401(b) when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) (citing *United States v. Kubrick,* 444 U.S. 111, 120 (1979)).  The "critical facts" are "that he has been hurt and who has inflicted the injury." *Kubrick*, 444 U.S. at 122.  This is all that the plaintiff must know, and "'[t]he action accrues even if the claimant believes that his injury was unavoidable and did not indicate negligent treatment.'"  *Id.* (quoting *Dessi v. United States,* 489 F. Supp. 722, 725 (E.D. Va. 1980)).  Thus, "once a prospective plaintiff learns of his injury, he is on notice that

there may have been an invasion of his legal rights and that he should investigate whether another may be liable to him," as he "'determine within the limitations period whether or not to file suit.'"  *Id.* at 742, 744 (quoting *Dessi,* 489 F. Supp. at 725).

The relevant injuries in Counts I, II, III, and V are the parties' emotional distress and J.F.'s physical harm from the April 2010 incident.  *See* Am. Compl. ¶¶ 100–02, 107–08, 113–14, 125–26.[5]  Fleming and Rice, individually and on behalf of the minor plaintiff, learned of these injuries within two weeks of the incident.  *See id.* ¶ 22.  And, they learned that the childcare provider inflicted the injury at the same time that they learned of the injury.  *See id.*

Certainly, "a single injury can arise from multiple causes, each of which constitutes an actionable wrong." *Saudi Arabia v. Nelson*, 507 U.S. 349, 375 (1993).  And here, Plaintiffs base their negligence claims in Counts I, II, III, and V, not on the childcare provider's acts, but rather on the Government's hiring, retention, and supervision of "more than two dozen teachers with criminal backgrounds at its Cody CDC child care facility on JBMHH."  Am. Compl. ¶ 99, 106, 112, 124.  Additionally, they claim that they did not learn of these acts until November 2012,

---

[5] They also claim in vague terms that J.F. "continued to be mentally and physically abused from April 2010 until January 2013." Am. Compl. ¶ 81.  But, this threadbare allegation that identifies neither the actor nor the form of injury does not sufficiently allege injury for purposes of claims sounding in negligent infliction of emotional distress and negligence.  *See Iqbal*, 556 U.S. at 678–79; *Zaklit v. Glob. Linguist Sols., LLC*, No. 14CV314 JCC/JFA, 2014 WL 3109804, at *16 (E.D. Va. July 8, 2014), *reconsideration denied,* 2014 WL 4161981 (E.D. Va. Aug. 19, 2014) ("Plaintiffs' threadbare assertions of 'physical injuries' and 'physical sickness' are not sufficient to state a claim for negligent infliction of emotional distress. . . . '"Physical pain," especially when referring to three separate plaintiffs, is boiler-plate language, which fails to sufficiently outline the three plaintiffs' physical injuries resulting from emotional distress.'" (citation omitted)); *cf. Gillespie v. Ashford Hosp. Prime*, No. 15-CV-350 JCC/IDD, 2015 WL 4361262, at *3 (E.D. Va. July 14, 2015) (concluding that plaintiff "sufficiently states a claim for negligence against [hotel owner/operator]" by alleging that a "light fixture fell, causing plaintiff 'severe injury . . . including physical, mental and emotional harm'" and that, "as a result of the falling light fixture, she was 'battered, struck and injured by blood, brain and other debris'" (quoting Am. Compl.); characterizing "exact nature of Plaintiff's 'severe injury'" as "less than clear" but adequate).

such that, as they see it, their claims are timely. *See* Pls.' Opp'n ¶¶ 67, 71. But, "[t]he law is clear that a claim accrues when a Plaintiff knows '"both the fact of injury and its *immediate physical cause*."'" *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at \*9 (D. Md. July 24, 2013) (quoting *Hensley v. United States*, 531 F.3d 1052, 1057 (9th Cir. 2008) (quoting *Dyniewicz v. United States,* 742 F.2d 484, 487 (9th Cir. 1984))) (emphasis added). Therefore, the claims accrued when Plaintiffs knew approximately two weeks after the April 2010 incident that the childcare worker inflicted injury on J.F. *See id.* Consequently, it is evidence on the face of the Amended Complaint that these claims are time-barred and subject to dismissal because Plaintiffs did not present them to the Army until March 27, 2014, almost four years later. *See Gould*, 905 F.2d at 742; 28 U.S.C. § 2401(b); *Tucker*, 83 F. Supp. 3d at 648.

In Count IV, the relevant injuries are "severe emotional distress" and "pain and suffering" caused by Murdock, a government employee, pushing the panic button and "causing multiple military police with guns drawn to surround J.F., a toddler, and her father." Am. Compl. ¶¶ 118–20. According to Plaintiffs, this occurred "[a] few months after the [April 2010] incident," *id.* ¶ 49; even accepting the later date that the government suggests, this second incident occurred no later than August 2011, Gov't Mem. 2. When this incident happened, Plaintiffs knew both their injuries and their cause, such that it accrued at that time.[6] *See Gould*, 905 F.2d at 742. Thus, because it is obvious from the pleadings that this claim accrued more than two years before Plaintiffs brought their administrative claim on March 27, 2014, it is time-barred and must be dismissed. *See Gould*, 905 F.2d at 742; 28 U.S.C. § 2401(b); *Tucker*, 83 F. Supp. 3d at 648.

---

[6] Indeed, Plaintiffs do not attribute their injuries alleged in Count IV to the negligent hiring, retention and supervision about which they later learned. *See* Am. Compl. ¶¶ 117–22.

Equitable Tolling

Plaintiffs argue for equitable tolling on the basis of the continuing violation theory or, alternatively, fraudulent concealment of the cause of injuries. Pls.' Opp'n 9. "[T]he 'continuing violation' theory … 'allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of [wrongdoing].'" *Smith v. Vilsak*, 832 F. Supp. 2d 573, 581 (D. Md. 2011) (quoting *Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 219 (4th Cir. 2007)). "To establish a continuing violation, a plaintiff must establish that the '"illegal act was a fixed and continuing practice."'" *Greene v. U.S. Dep't of Justice*, 606 F. App'x 77, 77–78 (4th Cir. 2015) (quoting *A Soc'y Without A Name v. Virginia,* 655 F.3d 342, 348 (4th Cir. 2011) (citation omitted)).

Plaintiffs have not alleged any "continuing practice" that encompasses the acts that immediately caused the injury; they have alleged two isolated incidents that occurred more than two years before they filed suit.    Their additional, conclusory allegation that J.F. "continued to be mentally and physically abused from April 2010 until January 2013," Am. Compl. ¶ 81, lacks the specificity necessary to describe an ongoing pattern. *See Maisha v. Univ. of N. Carolina*, No. 15-1185, 2016 WL 1056124, at *1 (4th Cir. Mar. 17, 2016) ("General allegations of 'a "pattern or practice" of [wrongdoing]' are insufficient to establish a continuing violation." (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 429–30 (4th Cir. 2004)). Insofar as they claim in the counts stemming from the first incident – the assault on the minor plaintiff – that "officials at JBMHH fail[ed] to properly hire and supervise teachers at the Cody CDC for multiple years," Pl.'s Opp'n 8–9, they have not pleaded facts sufficient to allege that JBMHH's hiring, retention, and supervision practices were part of the same "ongoing pattern" as the childcare worker's assault on J.F.  Significantly, while alleging that more than thirty other employees had criminal

backgrounds, they have not pleaded that the childcare provider who inflicted the injury on the minor plaintiff had a criminal background.  Nor do they counter the government's argument that she did not.  *See* Gov't Mem. 20; Pls.' Opp'n. And, they do not claim that the Government had any reason to know that the childcare worker would injure a child.  *See Heckenlaible v. Va. Peninsula Reg'l Jail Auth.*, 491 F. Supp. 2d 544, 553 (E.D. Va. 2007) ("'Liability for negligent hiring is based upon an employer's failure to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.'" (quoting *Interim Pers. of Cent. Va., Inc. v. Messer,* 559 S.E.2d 704, 707 (Va. 2002)).[7]

With regard to the Government's purported fraudulent concealment of the cause of Plaintiffs' injuries, it is true that "when the government intentionally delays in order to invoke the statute of limitations, the statute is tolled." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 745 (4th Cir. 1990) (citing *Kelley v. United States,* 568 F.2d 259, 262 (2d Cir.), *cert. denied,* 439 U.S. 830 (1978).  But, as discussed, Plaintiffs knew of the immediate cause of the injuries resulting from the childcare worker's assault on J.F. about two weeks after the assault occurred.  Thus, any delay as to the disclosure of the Government's alleged negligent hiring practices could not have delayed the statute of limitations.  Therefore, it does not provide a basis for equitable tolling.  *See id.*

---

[7] The parties agree that Virginia law applies.  Gov't Mem. 22; Pls.'s Opp'n 15.

<u>Sovereign Immunity</u>

Even if Plaintiffs had filed timely administrative claims, the Government cannot be liable under the FTCA for the alleged acts.  The Government only waives its sovereign immunity for claims

> for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred

28 U.S.C. § 1346(b)(1) (emphasis added).  Further, it specifically retains its sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment [or] false arrest."  28 U.S.C. § 2680(h).

Here, the childcare worker was not acting within the scope of her employment when she assaulted J.F.  Moreover, even though Plaintiffs claim that the unnamed government employees responsible for hiring the childcare workers with criminal backgrounds acted within the scope of *their* employment, and that their wrongful acts were acts of negligence, not intentional torts, Am. Compl. ¶¶ 103, 109, 115, 121, 127, the claims in Counts I, II, III, and V nonetheless arise out of the childcare worker's assault on J.F., and the unnamed government employees' role in hiring childcare workers.  *See* 28 U.S.C. § 2680(h).  The Government's purported liability for their acts is dependent on the fact that they hired childcare workers and one, after that employment relationship was established, committed an assault.  Under these circumstances, there is no basis for imposing liability on the government.  *See* 28 U.S.C. §§ 1346(b)(1), 2680(h); *see also Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995) ("An allegation of 'negligent supervision' will not render an otherwise unactionable claim actionable so long as the negligent supervision claim depends on activity of the supervised agent which is itself immune."); *cf.*

11

*Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 615 (D. Md. 2011) ("*Sheridan* [*v. United States*, 487 U.S. 392, 400 (1988)] recognized the viability of a negligence action against the government related to an intentional tort committed by an individual employed by the government, where the employee did not act within the scope of his employment *and the asserted basis for liability is 'entirely independent' from the employment relationship*." (emphasis added)).

<u>Failure to State a Claim</u>

Moreover, Plaintiffs fail to state a claim for negligent infliction of emotional distress, for which they "must allege a 'physical injury [that] was the natural result of fright or shock proximately caused by the defendant's negligence'"; there must be "'a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.'" *Gillespie v. Marriott Int'l, Inc.*, No. 15-CV-350 JCC/IDD, 2015 WL 2374610, at *2 (E.D. Va. May 18, 2015) (quoting *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833-34 (Va. 2000) (citations omitted)).   Here, Fleming and Rice allege that they suffered "emotional distress," but they do not allege any physical injury to themselves.   Moreover, the only physical injury to J.F. that Plaintiffs allege occurred as a result of the assault, not as a result of her "'emotional disturbance" from the Government's negligence.   *See* Am. Compl. ¶ 113 ("Plaintiff J.F. sustained serious injuries at the hands of her teacher . . . ."); *Gillespie*, 2015 WL 2374610, at *2.   Consequently, they have not stated a claim for negligent infliction of emotional distress.   *See id.*

And, as for negligence in supervision, a negligence claim cannot be based on supervision of an employee under Virginia law.   *See Jones v. Kroger Ltd. P'ship I*, 80 F. Supp. 3d 709, 714–15 (W.D. Va. 2015) (dismissing negligence claim based on defendants' negligent supervision of

an employee; reasoning that in *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d

751, 754 (Va. 1988), "the Supreme Court of Virginia held that an employer has no duty to

supervise its employees to prevent the excessive criticism of one employee by another," and

"[t]he vast majority of courts have 'interpreted *Dowdy* as foreclosing any cause of action for

negligent supervision in Virginia'" (citations omitted)).

## Conclusion

For these reasons, even though the circumstances Plaintiffs allege are deplorable,

Plaintiffs' claims must be dismissed. The dismissal shall be with prejudice, given that Plaintiffs

already had the opportunity to amend to address the deficiencies the Government identified in

their original complaint, when the Government sought leave to file its pending motion before

Plaintiffs filed the Amended Complaint. ECF No. 8. Plaintiffs failed to cure the deficiencies,

and further amendment would be futile, given that the statute of limitations has run. *See McLean*

*v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009) ("Once a court has determined that the

complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as

the claim cannot be made viable through reformulation." (internal citation omitted)); *Crews v.*

*Virginia*, No. 16CV407(JCC/JFA), 2016 WL 3763889, at *3 (E.D. Va. July 14, 2016) ("As any

subsequent amendment to Plaintiff's Second Amended Complaint would be futile in curing the

statute of limitations issues discussed above, the Second Amended Complaint is dismissed with

prejudice as to the Defendants who have filed these Motions to Dismiss.").

## ORDER

Accordingly, it is, this <u>1st</u> day of <u>August</u>, <u>2016</u>, hereby ORDERED that

1. The Government's Motion to Dismiss, ECF No. 17, IS GRANTED;

2. Plaintiffs' Amended Complaint IS DISMISSED WITH PREJUDICE; and

3.   The Clerk SHALL CLOSE this case.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb